**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-02693-MEH

CARMEN CRINER,

    Plaintiff,

v.

PPF AMLI 10020 TRAINSTATION CIRCLE
LLC d/b/a AMLI RIDGEGATE; AMLI
RESIDENTIAL PROPERTIES, L.P. d/b/a
AMLI RESIDENTIAL; BEN LEE, MONIQUE
CLEAR; STEPHANIE GLOWCZEWSKI; and
GREGORY MUTZ,

    Defendants.

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

---

COME NOW Defendants PPF AMLI 10020 Trainstation Circle, LLC, d/b/a AMLI Ridgegate ("AMLI Ridgegate"), AMLI Residential Properties, L.P., d/b/a AMLI Residential ("AMLI Residential"), Ben Lee, Monique Clear, Stephanie Glowczewski, and Gregory Mutz (collectively, "AMLI"), by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby move this Court to grant summary judgment for the Defendants on all claims asserted by Plaintiff Carmen Criner ("Plaintiff") and dismiss her First Amended Complaint with prejudice. Based on the undisputed material facts as established by the record in this case, Plaintiff cannot prove an essential element of each of her claims. Accordingly, Defendants are entitled to summary judgment. In support of their Motion for Summary Judgment, AMLI shows the Court as follows:

1 | P a g e

CRINER v. PPF AMLI 10020 TRAINSTATION CIRCLE, LLC ET AL.
CASE 1:21-CV-02693-MEH
MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

## **INTRODUCTION AND BACKGROUND**

This lawsuit is the most recent installment in a lengthy, multi-action saga of litigation initiated *pro se* by Plaintiff against various apartment complexes for alleged race and disability discrimination.   On multiple other occasions, Plaintiff has sued other apartment complexes in this federal district, alleging facts uncannily similar to those alleged in this case, asserting virtually identical causes of action, and claiming similar damages.   Now, Plaintiff has returned to this Court with her crosshairs trained on AMLI Residential, AMLI Ridgegate, and its individual employees.

Despite spanning 24 pages and 149 paragraphs, Plaintiff's long and labyrinthine First Amended Complaint can be distilled to its essence as follows: Plaintiff had a 1-year lease agreement (the "Lease") with AMLI Ridgegate, to which she attempts to bootstrap 12 claims against AMLI for allegedly failing to protect her from the ambient air on the premises.   Two of Plaintiff's claims, Claim Four for "Deceptive Trade Practices" under C.R.S. § 6-1-105 and Claim Five for negligence,[1] rely on allegations that AMLI falsely advertised AMLI Ridgegate as being an entirely "smoke free" property (the "Advertising Claims").   Based on the undisputed material facts in the record of this case, the Advertising Claims fail as a matter of law because Plaintiff cannot prove that AMLI placed any false information in any advertisements or that Plaintiff relied on any allegedly false advertisements when she executed her lease.

The remaining claims rely on allegations that AMLI wrongfully denied Plaintiff's requested accommodations on the basis of her race and/or disability status, in retaliation

---

[1] Plaintiff also alleges for her negligence claim that AMLI breached a duty to her by failing to grant her requested accommodations.  Thus, Plaintiff's negligence claim is included in both categories of claims.

for protected activity under the Fair Housing Act ("FHA"), and/or in violation of one or more common law duties.  These claims include Claim One for "Denied Accommodations" under FHA 42 U.S.C. § 3604(f)(3)(B), Claim Two for refusing to negotiate rent under FHA 42 U.S.C. § 3604(a), Claim Three for discrimination in "Terms and Conditions" under FHA 42 U.S.C. § 3604(b), Claim Five for common law negligence, Claim Six for "Interference" under FHA 42 U.S.C. § 3617, Claim Seven for discrimination under 42 U.S.C. § 1981, Claim Eight for breach of the state law warranty of habitability, Claim Nine for breach of the state law covenant of peaceful and quiet enjoyment, Claim Ten for breach of contract, Claim Eleven for intentional infliction of emotional distress ("IIED"),[2] and Claim Twelve for "Retaliation" under FHA 42 U.S.C. § 3617 (the "Accommodations Claims").

The Accommodations Claims also fail as a matter of law because Plaintiff cannot prove that her requested accommodations were either reasonable or necessary, that AMLI denied them, much less denied on the basis of her race, disability, or protected activity, or that any such denials constituted a breach of any legal duties AMLI may have owed to Plaintiff.  Indeed, the Colorado Division of Regulatory Agencies ("DORA"), Civil Rights Division (the "Division"), recently concluded its investigation of Plaintiff's administrative complaint, which asserted identical allegations as the First Amended Complaint.  The Division made a factual determination, based on both the evidence provided by AMLI and the Plaintiff's lack of evidence, that AMLI's denial of Plaintiff's requested accommodations were not based on disability or race.  This Court should reach

---

[2] Claim Eleven is styled only as a claim for "Infliction of Emotional Distress," but it is clear from Plaintiff's allegation that "Defendants [*sic*] conduct was extreme and outrageous," (First Amended Complaint ("FAC"), ¶ 140.), that she intends this claim to be one for IIED.  *See Pearson v. Kancilia*, 70 P.3d 594, 597 (Colo. Ct. App. 2003) (stating requirement for IIED claim that "a plaintiff must show that . . . the defendant engaged in extreme and outrageous conduct").

the same conclusion, as demonstrated herein.  Because Plaintiff's claims fail as a matter of law, AMLI is entitled to summary judgment and respectfully urges this Court to dismiss Plaintiff's First Amended Complaint in its entirety.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1(a) for this district and Section III(F) of this Court's practice standards for civil actions, AMLI provides the following statement of undisputed material facts:

1.      Plaintiff is a Black woman who has multiple chronic physical and mental conditions, including a "neurological disability" that causes seizure-like symptoms in response to certain stimuli, asthma, and anxiety.  (*See* FAC, at p. 1; Deposition of Carmen Criner, October 5, 2022 ("Plaintiff Dep."), at 4:6-5:10, 6:5-7:20, 9:9-21, and 10:4-20; Plaintiff's Deposition Errata, at 239:1-3.)[3]

2.      Plaintiff has lived in various apartment complexes over the last several years, including multiple apartments in the greater Denver, Colorado area.  (Plaintiff Dep., at 10:21-11:14 and 30:3-10.)    Because of her neurological condition, Plaintiff "always need[s] a top floor unit because [she] cannot tolerate the excessive noise from tenants residing above [her]."  (FAC, ¶ 29.)

3.      Plaintiff also experiences "compromised respiratory issues when exposed to cigarette smoke, secondhand smoke, and marijuana smoke."  (Id., at p. 1.)  Thus, when Plaintiff wants to move into a property, she researches it online to see if it is a "smoke-

---

[3] AMLI notes that the depositions of Plaintiff and Mr. Lee are cited throughout this Memorandum.  AMLI has submitted the Defendants' Notice of Filing Plaintiff's Deposition Transcript, ECF No. 78, and Defendants' Notice of Filing Ben Lee's Deposition Transcript, ECF No. 79, and attached full and complete copies of both transcripts and errata sheets, as applicable.  For the Court's convenience and ease of reference, however, AMLI has also attached excerpts of both transcripts, which include all pages to which AMLI cites herein.

free" property (*i.e.*, a property that does not allow residents to smoke anywhere on the premises), and if she does not see an advertisement indicating whether smoking is permitted, then she contacts the property to ask.  (Plaintiff Dep., at 60:7-18.)

4.      Plaintiff does not normally disclose information about her disabilities and her sensitivity to secondhand smoke up front.  (Id., at 14:23-15:5.)  However, she has a "standard communication" to disclose this information to apartment staff "if [she] [does] not understand or if [she] get[s] a conflicting answer" to an inquiry about an apartment's smoking policy.[4]  (Id., at 16:9-16.)

5.      Plaintiff toured AMLI Ridgegate sometime in 2018.  (Id., at 67:15-68:5.)  She was initially drawn to the property because she "saw a smoke-free advertisement" for it.  (Id., at 75:22-23.)  She did not ask anyone about the smoking policy at AMLI Ridgegate during that time.  (Id., at 75:6-23.)  She decided not to apply to rent an apartment at AMLI Ridgegate at that time because it was out of her budget.  (Id., at 76:11-17.)

6.      Prior to living at AMLI Ridgegate, Plaintiff lived in at least 3 other multifamily housing complexes where smoke, including cigarette smoke and grill smoke, caused her to have health problems.  (Id., at 111:18-113:3.)

7.      One of these properties was IMT Ridgegate, where Plaintiff lived from November 2018 through June of 2019, (Id., at 30:7-10) after concluding that AMLI Ridgegate was too expensive.  (Id., at 76:11-17.)  Plaintiff saw IMT Ridgegate advertised as a "smoke free community," so she did not ask any staff at the property about their smoking policy.  (Id., at 46:16-47:5.)  She also did not mention to anyone at IMT Ridgegate

---

[4] Notably, Plaintiff's deposition testimony that she does not disclose her disabilities, except through a standard communication when necessary, contradicts her allegation in the First Amended Complaint that she, unprompted, "told Ms. Clear [that she was] disabled" during her tour of AMLI Ridgegate.  (FAC, ¶ 5.)

that she needed to live in a smoke-free complex because she "knew" that it was smoke-free based on the advertisements and the absence of anything in the lease stating that smoking was *permitted*, which Plaintiff believes "should be in the lease."  (Id., at 54:19-55:5 and 58:3-17.)

8.     While at IMT Ridgegate, Plaintiff experienced disability-related health issues due to excessive noise and grill smoke coming from the apartment below her.  (Id., at 35:4-37:4; *Criner v. IMT Capital III RG LLC d/b/a IMT at Ridgegate*, D. Colo. No. 1:19-cv-02136-CMA-KLM, Doc. 1, "Complaint and Jury Demand" (July 25, 2019) ("IMT Ridgegate Complaint"), attached hereto as **Exhibit 1**.)  Due to IMT Ridgegate's alleged inaction and mistreatment in response to her complaints, (Plaintiff Dep., at 37:5-38:5), Plaintiff sued IMT Ridgegate in this District alleging race and disability discrimination, among other claims.  (Id., at 30:25-31:9 and 45:6-16; Exhibit 1, at pp. 14-19.)

9.     On or about June 5, 2019, Plaintiff moved out of IMT Ridgegate and into another Denver-area apartment, Caliber at Cornerstar.  (Plaintiff Dep., at 44:2-15.)  She toured the property and spoke with the staff about their smoking policy prior to moving in.  (Id., at 12:12-20.)  She specifically asked whether smoking was permitted on the property because she did not see any advertisements stating that information, and she was told that it was a non-smoking community.  (Id., at 13:9-14:22.)  However, in July of 2019, Plaintiff began noticing cigarette smoke coming into her apartment.  (Id., at 21:19-22:5.)  She moved out of the apartment that month.  (Id., at 26:24-27:4.)

10.     Plaintiff sued Caliber at Cornerstar in this District in August of 2019, asserting a claim for disability discrimination, among others, for allegedly inadequately responding to her complaints about cigarette smoke and refusing to grant her requested

accommodation to be allowed to terminate her lease early without penalty and to be refunded her out-of-pocket expenses. (Id., at 24:11-26:23; *Criner v. Roscoe Props., Inc., and Echelon Prop. Grp., LLC*, D. Colo. No. 1:19-cv-02165-KLM, Doc. 6, "Complaint" (Sept. 9, 2019) ("Cornerstar Complaint"), attached hereto as **Exhibit 2**.) She also asserted a claim for race discrimination based on her allegation that other residents, all of whom were Caucasian, were accurately informed that Caliber at Cornerstar was a smoking community. (Plaintiff Dep., at 31:10-32:24.; Exhibit 2, at pp. 17-18.)

11.     Plaintiff signed an Apartment Lease Agreement (the "Lease") with AMLI on or about May 25, 2021, to rent a one-bedroom apartment (number 440) at AMLI Ridgegate for 12 months at a monthly rate of $1,441.00. (*See generally* Lease, Exhibit 3 to Plaintiff Dep., attached hereto as **Exhibit 3**.)

12.     Before applying to rent an apartment at AMLI Ridgegate or signing the Lease, Plaintiff contacted AMLI Ridgegate and spoke with the staff there, but she never asked about or discussed the smoking policy "because [she] knew AMLI was a smoke-free community," and thus "[t]here was no need to" do so. (Plaintiff Dep., at 78:15-79:16.)

13.     Plaintiff reached this conclusion not from any third-party advertisements for AMLI Ridgegate, but based solely on the information presented on the smoking policy in place *on the property's own website*. (Id., at 86:14-87:13, 87:23-88:11, 89:20-90:11, and 92:16-25. *See also* Plaintiff's Lease Application, Exhibit 4 to Plaintiff Dep., DEF000039-57, attached hereto as **Exhibit 4**, at DEF000040; Plaintiff's July 28, 2021 e-mail to AMLI Ridgegate, B. Lee, and S. Glowczewski, Exhibit 5A to Plaintiff Dep., attached hereto as **Exhibit 5**, at pp. 1-2.) No one from AMLI Ridgegate represented to Plaintiff that it was a smoke-free community during the application process. (Plaintiff Dep., at 191:13-21.)

14.     Specifically, Plaintiff relied on the "Breatheasy" advertisement on the AMLI Ridgegate website, which states in its entirety: "Breatheasy.  AMLI proudly offers *common areas* that are 100% smoke-free, fostering a healthy living environment."  (*See* AMLI Ridgegate website screenshot, Exhibit 5 to Plaintiff Dep., attached hereto as **Exhibit 6**, at p. 1 (emphasis added); Plaintiff Dep., at 85:2-12.)   Plaintiff believes that "[a] living environment is the dwelling," but she is adding that language onto the advertisement; it is not actually what the advertisement on the website says.  (Id., at 85:25-96:9.)   By contrast, AMLI's websites for its properties that do prohibit residents from smoking inside their apartments explicitly say so, stating in the "Breatheasy" advertisement that the property "is 100% smoke free *both inside your apartment home and out*."  (*See* AMLI Dry Creek website screenshot, available at: https://www.amli.com/apartments/denver/englewood-centennial-apartments/amli-dry-creek/amenities  (last accessed  Dec.  9,  2022), attached hereto as **Exhibit 7**; AMLI Littleton website screenshot, available at: https://www .amli.com/apartments/denver/south-metro-denver-apartments/amli-littleton-village/amen lties (last accessed Dec. 9, 2022), attached hereto as **Exhibit 8**.)

15.     Before signing the Lease, Plaintiff read it "specifically . . . to see if there was anything about smoking, and it confirmed to [her] that there was no smoking in the common  areas  and  whatever  .  .  .  the  other  language  it  has."   (Id.,  at 61:24-62:4.) Consistent  with  AMLI's  "Breatheasy"  statement  on  the  AMLI  Ridgegate  website,  the "Community Policies" section of the Lease states that no smoking is permitted in the "common  areas"  such  as  "the  stairways,  [halls],  laundry  areas,  amenities  areas,  and  other common  areas,"  as  well  as  the  pool,  (Exhibit  3,  at  p.  13.),  "which  [was]  a  thumbs  up  to

[her]," and the AMLI Ridgegate website's reference to smoke-free common areas "was music to [her] ears[.]"  (Plaintiff Dep., at 63:12-64:25.)

16.     The Lease states that Plaintiff had to give AMLI "at least 60 days' advance written notice of termination or intent to move-out," and that if Plaintiff did not provide the required notice, she would "be responsible for rent through [60] days from the date notice is given . . . ."  (Exhibit 3, at p. 1.)  The Lease also states that Plaintiff had no right to early termination of the Lease, that Plaintiff would remain liable for the entire lease term if she moved out early, and that Plaintiff would also be liable for a reletting charge of $720.50 if she moved out without paying rent for the entire lease term.  (Id.)

17.     Plaintiff moved into AMLI Ridgegate on June 5, 2021.  (FAC, ¶ 7.)  She completed a move-in inspection report, in which she did not identify any issues related to the presence of cigarette smoke or any other unusual or concerning odors.   (AMLI Management Company Move-In/Move-Out Inspection Form, Exhibit 6 to Plaintiff Dep., DEF000125-26, attached hereto as **Exhibit 9**; Plaintiff Dep., at 102:7-105:14.)

18.     Plaintiff noticed an unidentified "odor" in her apartment in June of 2021.  (Id., at 99:17-19.) Plaintiff believed the odor was coming from the carpet, (FAC, ¶ 7.), and at her request, AMLI replaced the carpet in her apartment at no cost to her.  (Id.; Plaintiff Dep., at 105:15-106:8.)

19.     On or about July 14, 2021, Plaintiff saw a resident at AMLI Ridgegate smoking on the premises.  (Id., at 100:7-12; FAC, ¶ 11.)  Plaintiff called the AMLI Ridgegate office and was told that AMLI Ridgegate residents are permitted to smoke in their apartments.  (Plaintiff Dep., at 100:13-101:10; FAC, ¶ 13.)  Plaintiff spoke to Mr. Lee (AMLI Ridgegate's then property manager) on the phone that same day, (Id., ¶ 13), and

began "reaming" him about the "false smoke-free advertisement" on the AMLI Ridgegate website.  (Plaintiff Dep., at 116:23-117:2.)

20.     On July 20, 2021, Plaintiff sent a letter to AMLI requesting "to transfer to another AMLI residential community where smoking is not permitted anywhere on the property," and specifically "to a top floor unit with [her] rental rate, a one-year lease approval, transfer [her] deposit and without having to reapply, without fees, and without deposits, penalties, or additional rental costs or increased market rent."  (Plaintiff's July 20, 2021 letter to AMLI Ridgegate and B. Lee, attached hereto as **Exhibit 10**, at p. 1.)

21.     On July 24. 2021, Plaintiff sent an e-mail to Ms. Glowczewski requesting that an available top-floor apartment at AMLI Littleton Village be "placed on hold for [her] to transfer to," and informing Ms. Glowczewski that she had to remain in Douglas County to continue receiving rental assistance.   (Plaintiff's July 24, 2021 e-mail to S. Glowczewski, attached hereto as **Exhibit 11**, at p. 1; Plaintiff Dep., at 135:25-136:5 and 140:17-20.)  If Plaintiff had found a suitable and affordable property outside of Douglas County, she would have declined the rental assistance.   (Id., at 156:17-157:12.) However, Plaintiff never told this to AMLI.

22.     AMLI responded by letter on July 26, 2021, stating that it could not accommodate Plaintiff's request because there were "limited units available for rent in the coming weeks, [which did] not meet the specific requirements [Plaintiff] requested." (AMLI's July 26, 2021 letter to Plaintiff, attached hereto as **Exhibit 12**, at p. 1; Resident Activity sheet for Plaintiff's Lease, attached hereto as **Exhibit 13**, at p. 4 (noting that Mr. Lee "[d]elivered accommodation letter to her door on 7/26/2021").)  AMLI offered an alternative accommodation to allow Plaintiff to terminate the Lease early "without penalty

or additional fees," (Id.), waiving the $14,410.00 in rent for the remaining 10 months on the Lease and $720.50 reletting fee, totaling $15,130.50, for which Plaintiff would have otherwise remained liable.  (*See* Exhibit 3, at p. 1.)  AMLI also offered to arrange for a third-party vendor to clean the airducts in Plaintiff's apartment.  AMLI stated that the only property AMLI Residential had in Douglas County was AMLI Ridgegate but noted, in response to Plaintiff's request for a top-floor apartment at a nonsmoking community, that apartments meeting those criteria would soon be available at AMLI Littleton Village and AMLI Dry Creek (both located outside of Douglas County).  (Exhibit 12, at p. 1.)  However, AMLI informed Plaintiff that it could not accommodate Plaintiff's request for reduced rent at these other locations because AMLI did not believe a reduction of the market rates of those apartments to Plaintiff's current monthly rent was a reasonable accommodation. (Id.)

23.     Plaintiff submitted a second letter to AMLI on July 26, 2021, reiterating her complaints and demands, including her demand to have her Lease transferred to another, nonsmoking AMLI property.  (Plaintiff's July 26, 2021 letter to AMLI, attached hereto as **Exhibit 14**, at pp. 1-2.)  Plaintiff also threatened to initiate litigation in this District, file complaints against AMLI to government agencies, and contact the news media about her allegations.  (Id.)  Plaintiff acknowledges that the market rent for units meeting Plaintiff's criteria at AMLI Littleton Village and AMLI Dry Creek is upwards of $1,800.  (Plaintiff Dep., at 144:15-145:1.)  She also acknowledges that this is a substantial difference in rent from what she was paying.  (Id., at 130:7-131:15.)

24.     AMLI arranged for a third-party vendor, Coit Cleaning & Restoration Services ("Coit"), to clean the airducts in Plaintiff's apartment at no expense to her on or

about July 27, 2022.  (Plaintiff Dep., at 116:1-5 and 167:5-8; Coit Duct Cleaning Invoice #1107280R, DEF000613-14, attached hereto as **Exhibit 15**.)  The Coit representatives spoke to Plaintiff while at her apartment and stated that they did not detect any smoke odors or residue in her apartment.  (Plaintiff Dep., at 167:9-18.)  Mr. Lee also entered the apartment with the Coit representatives that day to try to verify the presence of cigarette smoke but did not detect any odor or other signs of cigarette smoke.  (Deposition of Ben Lee ("B. Lee Dep."), at 43:8-44:11; FAC, ¶ 41.)

25.    Plaintiff submitted a third letter to AMLI "amending" her prior demands because "AMLI [did] not have any other properties located in Douglas County for [her] to transfer to," and "demanding for AMLI Ridgegate to pay for the costs of transferring [her] to a smoke-free community that [she] select[s]," including, *e.g.*, all associated deposits, fees, moving costs for household goods, etc., as well as a refund of all deposits and fees paid to AMLI.  (Plaintiff's third letter to AMLI Ridgegate, attached hereto as **Exhibit 16**, at p. 1.)

26.    Plaintiff sent an e-mail to AMLI Ridgegate just after midnight on July 28, 2022, stating that she could not "pinpoint the exact times [she was] smelling cigarette smoke" because "it appear[ed] to be happening randomly."  (Plaintiff's July 28, 2021 e-mail to AMLI Ridgegate, attached hereto as **Exhibit 17**, at p. 1.)

27.    On or about July 28, 2022, AMLI again replied to Plaintiff declining to acquiesce to her demands, offering Plaintiff the option to terminate her Lease immediately without liability for the remaining rent and reletting fee, and identifying AMLI Littleton Village and AMLI Dry Creek as nonsmoking apartments in the area with top-floor units

that would soon be available.  (Plaintiff Dep., at 139:10-140:2; Exhibit 7 to Plaintiff Dep., attached hereto as **Exhibit 18**, at p. 1.)

28.     Another AMLI Ridgegate employee, Monique Clear, hand-delivered a copy of AMLI's reply letter while visiting Plaintiff's apartment, with the Plaintiff present, to again attempt to verify the presence of cigarette smoke.  (Exhibit 13, at p. 3; FAC, ¶¶ 45-46.) However, Ms. Clear was also unable to detect any odor or other signs of the presence of cigarette smoke.  (Plaintiff Dep., at 168:21-24.)

29.     Plaintiff responded by e-mail on the same day to AMLI's letter delivered by Ms. Clear, stating in relevant part that she "solely relied" on AMLI Ridgegate's website and the Lease as her basis for believing AMLI Ridgegate was entirely nonsmoking, that she was not required to disclose her claimed disability before applying to live there, and that "there was not any need for [her] to inquire about the smoking status of the community" because of the information on the AMLI Ridgegate website and in the Lease. (Exhibit 5, at pp. 1-2.)  Plaintiff also stated, contrary to her earlier statements, that she was in fact "able to transfer to another county."  (Id., at p. 1.)  Plaintiff concluded by stating that AMLI's alleged "conduct . . . must be reported to the legal authorities."  (Id., at p. 2.)

30.     On July 29, 2021, Plaintiff sent an e-mail to AMLI Ridgegate and Stephanie Glowczewski (AMLI's Area Vice President) with the subject line "72 Hour Notice," stating that she had "received legal consultation," that she was "holding AMLI Ridgegate accountable for" a non-exhaustive list of 8 legal claims, and that AMLI had 72 hours to arrange for her transfer "into a habitable dwelling," including "a 100% smoke-free extended stay hotel if no apartments are available."  (July 29, 2021 e-mail correspondence between Plaintiff and B. Lee, attached hereto as **Exhibit 19**, at pp. 2-3.)

31.     AMLI replied within 3 hours, reiterating its disagreement with Plaintiff's assertions, declining Plaintiff's demand to provide her alternate lodging and/or a hotel at AMLI's expense, and reiterating AMLI's prior offer of a reasonable accommodation allowing Plaintiff to terminate her Lease without fee or penalty, with an added offer to reimburse Plaintiff up to $750 for moving costs "[i]n the spirit of customer service."  (Id., at p. 2.)

32.     Plaintiff replied less than 30 minutes later, accusing AMLI Ridgegate of "modify[ing] [her] physician statement" and failing to accept her "reasonable" accommodations request.  Plaintiff flatly rejected the offer in AMLI's e-mail.  (Id., at p. 1.)

33.     Plaintiff called Ms. Glowczewski that day and left her a voicemail, to which Ms. Glowczewski replied by e-mail that evening reiterating AMLI's offer.  Plaintiff again replied within 30 minutes flatly rejecting the offer and concluding her e-mail stating, "I will see you in court."  (July 29, 2021 e-mails between Plaintiff and S. Glowczewski, attached hereto as **Exhibit 20**, at p. 1.)

34.     Plaintiff e-mailed AMLI Ridgegate and Ms. Glowczewski again on August 10, 2022, informing them that she was "vacating the premises due to hazardous cigarette smoke" in her apartment and demanding that, prior to her vacating, AMLI refund all money paid by her and Catholic Charities,[5] and pay her moving costs to move her household goods into storage for 6 months.  (August 10-12, 2021 e-mails between Plaintiff and AMLI, attached hereto as **Exhibit 21**, at p. 1.)

---

[5] Plaintiff only paid her own rent for June and September, 2021, prorated for the portion of each month she was in the apartment.  Catholic Charities paid all of her rent for July and August, 2021.  (Plaintiff Dep., at 181:22-184:4; Plaintiff Dep. Errata, at 239:13-18.)  Thus, to whatever extent Plaintiff seeks compensatory damages for rent paid, most of the money she is after was not even paid by her, but rather by Catholic Charities, and would result in a windfall for her if awarded.  (*See* Plaintiff Dep., at 184:18-25 (testifying, as to rent paid by Catholic Charities, "that that money was for [her] and paid on [her] behalf").

35.     Ms. Glowczewski replied on August 12, 2022, offering "as a matter of customer service" again to refund Plaintiff's application fee, move-in fee, and security deposit at the time of her move-out, as well as $750 toward Plaintiff's moving costs.  (Id., at p. 2.)

36.     Plaintiff replied to Ms. Glowczewski's e-mail that same day reiterating her complaints and informing AMLI, for the first time, that the "cigarette smokers" were in "units 443, 441, and . . . unit 340 below [her]," and that cigarette smoke entered her apartment "after 11pm and early morning hours when the resident [below her] is home." (Id., at p. 3.)  Plaintiff had provided no information regarding when and from where the cigarette smoke came since her July 28 e-mail stating that "it appear[ed] to be happening randomly."  (Statement of Undisputed Material Facts ("SUMF"), ¶ 26, *supra*.)

37.     Plaintiff again e-mailed Ms. Glowczewski and AMLI Ridgegate on August 16, 2021, demanding that AMLI require residents "to leave this building if they intend to smoke," reiterating her demand "to receive all [her] money back," and advising that she had already reported AMLI to certain government agencies as well as "all Denver news stations, including CNN," and would file a lawsuit in this District on August 20, 2021. (August 16, 2021 e-mails between Plaintiff and AMLI, attached hereto as **Exhibit 22**, at p. 1.)  On the same day, Ms. Glowczewski responded that Plaintiff's e-mail had been forwarded to AMLI's counsel for reply.  (Id.)

38.     On August 25, 2021, Plaintiff e-mailed Ms. Glowczewski and AMLI's counsel attempting to arrange payment of her moving costs, (August 25-27, 2021 e-mails between Plaintiff and AMLI's counsel, attached hereto as **Exhibit 23**, at p. 1.), despite

having already rejected this offer on at least 2 prior occasions and representing that she would instead be pursuing litigation.  (*See* SUMF, ¶¶ 31 and 32, *supra*.)

39.     The following day, AMLI's counsel responded with a request for Plaintiff to confirm that she had rejected the offer to cover moving costs and stating that Plaintiff would be allowed to break the Lease without penalty, would be responsible for pro-rated rent for September, and would not be refunded her application or move-in fees.  AMLI's counsel offered "to resolve [Plaintiff's] concerns" with AMLI by renewing the prior offer. (Exhibit 23, at pp. 1-2.)

40.     Plaintiff replied in consecutive e-mails, first conveying her belief that AMLI had "agreed to pay [her] moving costs, [and] return [her] application fee, move in costs and deposits," but that "[t]here was no agreement . . . that this offer would fully resolve the issue."  (Id., at p. 2.)  In her second e-mail, Plaintiff offered to dismiss any pending complaints with government agencies and refrain from pursuing litigation if AMLI would "return all of [her] money including Catholic Charities rental assistance . . . all [her] rent paid . . . [her] application fee, [her] move in costs and security deposit, and [her] doctors/hospital visits."  (Id., at p. 3.)

41.     Pursuant to Plaintiff's multiple prior rejections of AMLI's offers, AMLI's counsel replied to Plaintiff clarifying that AMLI would agree, as a customer service, to allow Plaintiff to terminate her Lease "without penalty," (Id.), *i.e.*, waiving the approximately $12,969 in rent for the approximately 9 months remaining on the Lease, plus the $720.50 reletting fee, totaling approximately $13,689.50 for which Plaintiff would otherwise have been liable, (*See* Exhibit 3, at p. 1.), but that AMLI would not refund Plaintiff any money other than her security deposit.  (Exhibit 23, at p. 3.)

42.     Plaintiff replied the same day, reiterating her intent to pursue litigation.  (Id.)

43.     Plaintiff moved into another apartment on September 3, 2021.  (FAC, ¶ 54.)

44.     Plaintiff alleges in this case that two Caucasian women, Haley Derlinga and Kelley Bliss, were similarly situated to her, and that AMLI treated them more favorably than Plaintiff on the basis of race.  (FAC, ¶¶ 43, 90, 98, 120-26; Plaintiff Dep., at 154:13-23 and 159:19-21.)

45.     Haley Derlinga (also known as Haley Kosman) is a Caucasian woman who rented apartment 352 at AMLI Ridgegate under a lease that was set to expire on July 26, 2021.  (*See* Resident Activity sheet for H. Kosman, attached hereto as **Exhibit 24**, at p. 1.)  During her lease, she intermittently had issues with an odor that she believed may have been marijuana smoke coming into her apartment.  (Id., at pp. 1-2.)  On May 21, 2021, she e-mailed Mr. Lee asking if she could lease apartment 418, which was becoming available on June 8, at the same rental rate she would have paid to renew her lease in apartment 352, which was $1,976 per month.  (*See* May 21-22, 2021 e-mails between H. Derlinga and B. Lee, attached hereto as **Exhibit 25**, at pp. 1-2.)  The market rate for apartment 418 was $2,051 per month.  (*See* B. Lee's May 22, 2021 e-mail to S. Gloczewski, attached hereto as **Exhibit 26**, at p. 1.)  Mr. Lee requested approval to offer Ms. Derlinga a rate of $2,000 per month, (Id.), as a gesture of customer service.  (B. Lee Dep., at 53:1-4.)  Mr. Lee also asked to waive Ms. Derlinga's transfer fee.  (Exhibit 26, at p. 1.)  However, this waiver was not included in Mr. Lee's offer to Ms. Derlinga, (*See* Exhibit 25, at p. 1.), and thus apparently was not approved.  Rather, Mr. Lee offered to waive Ms. Derlinga's 30-day notice requirement and agreed to reduce the market rent by

$51 per month.  (Id.)  Ms. Derlinga was also required to fill out another application to rent apartment 418 and reverify her income.  (Id.)

46.     Kelley Bliss, a Caucasian woman who initially rented apartment 132 at AMLI Ridgegate before transferring to apartment 357 on or about June 12, 2020.  On May 26, 2020, the former assistant property manager for AMLI Ridgegate, Ashley Flanagan, sent Ms. Kelley an e-mail stating that AMLI Ridgegate would waive the $400 transfer fee.  (*See* May 26, 2020 e-mails between A. Flanagan and B. Kelley, attached hereto as **Exhibit 27**, at pp. 6-7.)  Ms. Kelley was originally quoted to pay $1,975 per month to rent apartment 357, but before she executed her lease, the market rate went up to $1,976 per month.  (*See* Id., at p. 3-6.)  Despite her request for this to be corrected, (*See* Id.), she was ultimately required to agree to pay the full market rate of $1,976 per month in her lease.  (*See* B. Kelley Apartment Lease Agreement, attached hereto as **Exhibit 28**, at p. 1.)  She was also required to pay another pet deposit for apartment 357.  (*See* Exhibit 27, at p. 2.)  Aside from waiving the transfer fee, the only other accommodation Ms. Kelley received was to "meet [her] in the middle with a 2 week notice," rather than the required 30-day notice to vacate.  (May 28, 2020 e-mails between A. Flanagan and B. Kelley, attached hereto as **Exhibit 29**, at p. 2.)

47.     In addition to suing AMLI, Plaintiff filed an administrative complaint against AMLI with the District, asserting that AMLI discriminated against Plaintiff based on her race/color, disability, and source of income based on the same allegations in her First Amended Complaint.  (*See generally* Division's November 30, 2022, No Probable Cause Determination, attached hereto as **Exhibit 30**.)  Plaintiff alleged that AMLI thus violated the Colorado Anti-Discrimination Act, which "has been determined to be substantially

equivalent to the federal Fair Housing Act."  (Id., at p. 10.)  The Division investigated Plaintiff's allegations, weighed the evidence submitted by the parties, and made a factual determination that, based on the evidence presented by AMLI and the insufficiency of Plaintiff's evidence, there was no probable cause to support Plaintiff's allegations that AMLI discriminated against her.  (*See generally* Id.)

48.     Specifically, the Division found that "the evidence is insufficient to show [AMLI] failed to make a good faith effort to address [Plaintiff's] reasonable accommodation request," that AMLI denied Plaintiff's requests "because [AMLI] did not have any comparable apartments available that met [Plaintiff's] specifications and not due to discriminatory reasons," and that Plaintiff failed to "provide witness statements or any other substantiating evidence demonstrating that other similarly situated residents outside [Plaintiff's] protected classes were treated more favorably."  (Id., at pp. 8-9.)  The Division determined that AMLI did not violate the Colorado Anti-Discrimination Act.  (Id.)

## LAW AND ARGUMENT

### I.    Standard of Decision.

Rule 56(a) of the Federal Rules of Civil Procedure provides that a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphasis added).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  As Judge Brimmer of this district has explained:

> A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return

a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.

*Price v. Bavaria Inn Rest., Inc.*, No. 17-cv-03000-PAB-NYW, 2019 WL 6215640, at *3 (D. Colo. Nov. 21, 2019). "Affidavits or other evidence offered by a nonmovant must create a genuine issue for trial; . . . it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation and internal quotation marks omitted). Accordingly, summary judgment is appropriate where, as here, all of the material facts are undisputed based on the record and demonstrate, as a matter of law, that the Plaintiff cannot establish any of her claims.

## II.   AMLI is entitled to summary judgment on the Advertising Claims because its advertisement on the AMLI Ridgegate website is undisputedly accurate.

Plaintiff alleges that AMLI violated C.R.S. § 6-1-105 of the Colorado Consumer Protection Act ("CCPA") and its common law duty of reasonable care to Plaintiff by "falsely advertising" AMLI Ridgegate as a "smoke-free environment." (FAC, ¶¶ 101 & 110.) A plaintiff asserting a claim for negligence under Colorado common law "must prove: (1) the defendant owed a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff

Criner v. PPF AMLI 10020 Trainstation Circle, LLC et al.
Case 1:21-cv-02693-MEH
Motion for Summary Judgment and Memorandum in Support Thereof

was injured; and (4) the defendant's breach caused that injury." *Lopez v. Trujillo*, 399 P.3d 750, 753 (Colo. Ct. App. 2016).  To establish a private cause of action under the CCPA, a plaintiff must prove (1) that the defendant engaged in an "unfair or deceptive trade practice," (2) that the challenged practice occurred in the course of the defendant's business, (3) that it "significantly impacts the public" as actual or potential consumers, (4) that the plaintiff suffered injury to a legally protected interest, and (5) that the "unfair or deceptive trade practice" caused the plaintiff's injury.[6]  *Anson v. Trujillo*, 56 P.3d 114, 117-18 (Colo. Ct. App. 2002).

Both of these claims fail as a matter of law because the undisputed facts in the record show that AMLI neither misrepresented nor concealed material information about AMLI Ridgegate's smoking policy.   The AMLI Ridgegate website states directly under the "Breatheasy" logo, "AMLI proudly offers *common areas* that are 100% smoke-free, fostering a healthier living environment," (SUMF, ¶ 14), and Plaintiff admits this language is precisely what she relied upon in her decision to live at AMLI Ridgegate, along with the language of the Lease.  (SUMF, ¶¶ 13-16.)  This clear and unambiguous representation means exactly what it says, and it is undisputed that AMLI Ridgegate meets that representation, per its policy.  Moreover, Plaintiff admitted that while she believes "[a] living environment is the dwelling," she is adding that language to the advertisement, and the advertisement by its plain language is limited to "common areas."   (SUMF, ¶ 14.) Finally, it is indisputable that AMLI's websites for properties which do, in fact, prohibit

---

[6] The CCPA statutorily defines a "deceptive trade practice," in relevant part, as "represent[ing] that . . . property [is] of a particular standard, quality, or grade . . . if [the defendant] knows that they are of another," and "fail[ing] to disclose material information concerning . . . property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction."  C.R.S. §§ 6-1-105(1)(g) & 6-1-105(1)(u).

smoking inside the apartments explicitly say that the property is "100% smoke free *both inside your apartment home and out*."  (Id.)  This information is, and was at all times relevant to this case, publicly available for anyone to access, including Plaintiff. Therefore, Plaintiff cannot establish that AMLI engaged in an "unfair or deceptive trade practice," as required for her CCPA claim, or that AMLI breached any duty of reasonable care allegedly owed to Plaintiff based on the advertisement.[7]  For that reason, AMLI is entitled to summary judgment on the Advertising Claims.

**III.    Defendants are entitled to summary judgment on the Accommodation Claims because AMLI acted reasonably in declining Plaintiff's requested accommodations and instead offered accommodations that were reasonable.**

A.    Plaintiff's claim for disability discrimination under the FHA for failure to accommodate fails because her requested accommodations were neither reasonable nor necessary.

To state a claim of discrimination under the FHA for failure to accommodate, a plaintiff must show that: (1) the plaintiff or her associate has a disability as defined by the FHA; (2) the defendant knew or reasonably should have known of the claimed disability; (3) accommodation of the  disability may be necessary to afford the person with a disability an equal opportunity to use and enjoy the dwelling; (4) the accommodation is reasonable; and (5) defendants refused to make such accommodation.  *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F.Supp.3d 1177, 1183 (D. Colo. 2016).

1.    Plaintiff's requested accommodations were not reasonable.

---

[7] AMLI disputes Plaintiff's apparent belief that an advertisement on the AMLI Ridgegate website creates a common law duty of reasonable care owed to Plaintiff.  However, the Court need not even reach that issue here because even assuming, without conceding, that such a duty was owed, Plaintiff cannot establish that it was breached.  Therefore, AMLI need not brief this issue further at this time.

"An accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens." *Id.* at 1185-86. "Although a defendant may be required to make a reasonable accommodation, 'it does not have to provide a disabled individual with . . . the accommodation of his choice.'" *Elliott v. QF Circa 37, LLC*, No. 16-cv-0288-BAS-AGS, 2018 WL 2933467, at *12 (S.D. Cal. June 12, 2018) (citing *McElwee v. City. of Orange*, 700 F.3d 635, 641 (2d. Cir. 2012); *Weiss v. 2100 Condo. Ass'n*, 941 F.Supp.2d 1337, 1344 (S.D. Fla. 2013)) (ellipses in *Elliott*).

Here, Plaintiff first requested to have her existing Lease transferred to a top-floor unit at a nonsmoking apartment complex in Douglas County without having to apply to live at the complex or pay a deposit. AMLI could not grant this accommodation, even if otherwise reasonable, as it did not operate any property other than AMLI Ridgegate in Douglas County. (SUMF, ¶¶ 20-21, 23, and 25.) Plaintiff eventually modified her demand only by removing the criterion that the property be in Douglas County. (SUMF, ¶ 29.) AMLI repeatedly informed Plaintiff that it could not accommodate her demands in part because no apartments meeting her many criteria (top floor, same rental rate, non-smoking) were available. (SUMF, ¶¶ 22 and 27.) Where, as here, an apartment tenant's requested accommodation is effectively impossible to provide, the accommodation is unreasonable, and it is proper to grant summary judgment for the defendant apartment. *See Alonso Cano v. 245 C & C, LLC*, No. 19-21826-CIV-Lenard/O'Sullivan, 2021 WL 2498824, at *24 (S.D. Fla. May 18, 2021) (granting summary judgment for defendant apartment on plaintiffs' disability discrimination claim under FHA, where record established that plaintiffs' requested accommodation was impossible to provide).

Moreover, a demand for lowered rent is an unreasonable request.  *See Giebeler v. M&R Assocs.*, 343 F.3d 1143, 1154 (9th Cir. 2003) (stating that "mandating lower rents for disabled individuals would fail the . . . reasonableness inquiry").

Plaintiff's subsequent requests were no more reasonable than these.  She later demanded that AMLI provide her temporary lodging in a nonsmoking, extended-stay hotel for an indefinite period of time since no apartments were available.  (SUMF, ¶ 30.)  Finally, she demanded that AMLI Ridgegate forbid its residents from smoking in their apartments.  (SUMF, ¶ 37.)  Residents are allowed to smoke in their apartments.  *See* C.R.S. §§ 25-14-205(1)(a) and 25-14-204(1)(p).   Plaintiff admits as much.  (*See* Plaintiff Dep., at 170:15-21.)  Federal courts in other districts have held that the plaintiff "is not entitled to the accommodation of [their] choosing—a smoking ban on the entire [defendant apartment's] premises," to prevent the plaintiff's alleged exacerbation of a disability from secondhand smoke.  *James v. Creekside Seniors, LP*, No. 3:14-cv-00432-CWD, 2016 WL 912176, at *11 (D. Idaho Mar. 4, 2016).  *See also Davis v. Echo Valley Condo. Ass'n*, 349 F.Supp.3d 645, 656-57 (E.D. Mich. 2018) (holding that plaintiff's requested accommodation to ban smoking throughout a condominium complex was unreasonable in part because it would violate state law and thus impose significant functional and administrative burdens on the defendant).   Therefore, Plaintiff cannot prove that her requested accommodations were reasonable, and AMLI is entitled to summary judgment.

2.    Plaintiff's requested accommodations were not necessary.

An accommodation must be "necessary to afford the . . . person [with a disability] an equal opportunity to use and enjoy the dwelling."  *Arnal*, 226 F.Supp.3d at 1183.  The Tenth Circuit defines "necessary" as implying something more than "merely helpful or

conducive," and "suggest[ing] instead something 'indispensable,' 'essential,' something that 'cannot be done without.'"  *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917, 923 (10th Cir. 2012).   "Thus, a 'necessary' accommodation is one that alleviates the effects of a disability."  *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1288 (11th Cir. 2014) (citation omitted) (emphasis added).

Based on the undisputed facts in this case, Plaintiff cannot prove that her requested accommodations would have alleviated the alleged effects of secondhand smoke on her disability.  Plaintiff repeatedly demanded to be transferred to a top-floor unit at a nonsmoking apartment complex.  (*See* SUMF, ¶¶ 20-21, 23, and 25.)  Plaintiff alleges that she needs a top-floor unit because excessive noise triggers her neurological condition, (SUMF, ¶ 2.), and that she must live in a nonsmoking apartment complex because secondhand cigarette smoke triggers her respiratory issues.  (SUMF, ¶ 3.)  Yet, Plaintiff herself has alleged in another lawsuit that both her neurological and respiratory issues were triggered by noise and *grill* smoke, rather than *cigarette* smoke, coming from an apartment below her, causing precisely the same types of issues she complains of here in her First Amended Complaint.  (SUMF, ¶¶ 6-8.)  *See Davis*, 349 F.Supp.3d at 656-57 (holding plaintiff's requested accommodation to ban smoking was unreasonable, where there was no proof it would allow the plaintiff to enjoy her property, since she had previously complained of non-tobacco fumes aggravating her respiratory condition).

Thus, even if AMLI had been able to acquiesce to Plaintiff's highly unreasonable demands, Plaintiff can only speculate, but cannot prove, that these accommodations would have alleviated her issues.  Indeed, it seems more than likely that Plaintiff would have encountered some other type of smoke, fume, odor, noise, or other environmental

factor that would have supposedly exacerbated her disability, just as allegedly occurred at the prior apartment communities she has sued.  Encountering noises and odors is inevitable in a multifamily residence, and neither AMLI nor any other apartment complex can reasonably be held to be a guarantor of every resident's total comfort at all times among such ambient air and sounds.  Plaintiff's allegation that her symptoms would have been alleviated if her demands were met is pure guesswork and cannot be proven.  To the contrary, all of the evidence weighs against this conclusion, especially if Plaintiff merely transferred to another AMLI Ridgegate apartment, and AMLI is entitled to summary judgment.

   B.   <u>Plaintiff's claims for race discrimination under 42 U.S.C. §§ 1981 and 3604 fail because Plaintiff cannot prove that she was treated less favorably than other similarly situated residents not members of her protected classes.</u>

Plaintiff alleges that AMLI discriminated against her in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 3604 by denying her requested accommodations on the basis of her race.  Plaintiff alleges that other Caucasian residents of AMLI Ridgegate were similarly situated and were treated more favorably by being allowed to transfer to another apartment at AMLI Ridgegate without paying an application fee and at reduced rental rates.  (FAC, ¶¶ 39, 43, 70, 77, 89-99, and 118-127.)  The Division has already investigated these allegations and found them to be unfounded.  (SUMF, ¶¶ 47-48.)

Section 1981 prohibits race discrimination in the making and enforcement of contracts, including the modification of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contract.  42 U.S.C. § 1981.  To state a § 1981 claim in a non-employment context, the plaintiff must show that (1) she is a member of a racial minority group, (2) the defendant intended to discriminate on the basis of her race,

Criner v. PPF AMLI 10020 Trainstation Circle, LLC et al.
Case 1:21-cv-02693-MEH
Motion for Summary Judgment and Memorandum in Support Thereof

and (3) the discrimination concerned one or more activities included in § 1981. *Farris v. Stepp*, No. 20-cv-02346-DDD-NYW, 2021 WL 5200210, at *4 (D. Colo. Nov. 9, 2021) (citing *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001)).

Section 3604 of the FHA also prohibits race discrimination. *Grays v. Kittredge Co. Partners, LLC*, No. 1:20-cv-00208-WJM-SKC, 2021 WL 1300601, at *3 (D. Colo. Feb. 17, 2021). For a discrimination claim alleging disparate treatment, as Plaintiff does, the plaintiff must show that she was "subjected to explicitly differential—i.e. discriminatory—treatment." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995). The plaintiff must prove that race was a "significant factor" motivating the allegedly disparate treatment. *See, e.g., Burris v. Wilkins*, 544 F.2d 891, 891 (5th Cir. 1977).

First, Plaintiff has failed to present any direct evidence of discrimination, such as a facially discriminatory policy or statements showing discriminatory motivation. *See Griffis v. City of Norman*, 232 F.3d 901 (Table), at *4 (10th Cir. 2000) (describing direct versus indirect evidence of discrimination). Further, Plaintiff's attempt to show indirect evidence of discrimination through disparate treatment fails because the Caucasian residents to whom she refers were not similarly situated to her and did not receive any more favorable treatment than she was offered. AMLI had legitimate, nondiscriminatory reasons for refusing Plaintiff's unreasonable demands, as shown by the evidence in this case and as determined by the Division's investigation. (*See* SUMF, ¶¶ 47-48.)

Unlike Plaintiff, Ms. Kelley agreed to pay the full market rent for the apartment to which she transferred, and Ms. Derlinga agreed to pay nearly the full market rent for hers. (*See* SUMF, ¶¶ 45 and 46.) Plaintiff, by contrast, demanded to continue paying $1,410 per month for apartments which she admits had market values upwards of $1,800 per

month.  (SUMF, ¶ 23.)  Thus, in effect, she demanded a rent reduction of approximately $400 per month at a minimum.  Plaintiff herself admitted that hundreds of dollars in rent per month is a substantial difference.  (Id.)  Moreover, both Ms. Kelley and Ms. Derlinga were at the end of their lease terms and asked to move to a specific apartment that was about to be available.  (SUMF, ¶¶ 45 and 46.)  Plaintiff, on the other hand, was less than 2 months into her Lease and demanded that AMLI locate and arrange for her to move to a top-floor unit in a different, nonsmoking AMLI apartment in or near Douglas County— criteria that were simply impossible to meet as a purely factual matter.  Based on these highly significant factual distinctions, Plaintiff cannot demonstrate that Ms. Derlinga and Ms. Kelley were similarly situated to her.  (*See* SUMF, ¶ 48.)

Neither Ms. Kelley nor Ms. Derlinga received any other material benefits that Plaintiff did not also receive.  AMLI waived their 30-day notice requirements, but Plaintiff received that same benefit.  AMLI did <u>not</u> offer to waive Ms. Derlinga's transfer fee and required her to fill out another application and reverify her income for her transfer.  (SUMF, ¶ 45.)  AMLI did waive Ms. Kelley's $400 transfer fee but stood to recover this amount since she agreed to pay the full market rent, and still required her to pay another pet deposit.  (SUMF, ¶ 46.)  Meanwhile, AMLI repeatedly offered to refund Plaintiff's fees associated with her move-in and waive the transfer fee, but she rejected those offers. Consequently, Plaintiff cannot demonstrate that she was treated unfavorably compared to these other residents.  (*See* SUMF, ¶¶ 47-48.)

For these reasons, Plaintiff has failed to present any indirect evidence of race discrimination or any evidence that AMLI's actions toward her were pretext for race discrimination.  As a result, she cannot establish that her race was a significant factor, or

even a factor at all, in AMLI's decision to deny her requests for a new apartment. Therefore, Plaintiff's race discrimination claims under 42 U.S.C. §§ 1981 and 3604 fail as a matter of law, and AMLI is entitled to summary judgment on them.

> C.   <u>Plaintiff's claims for "Intimidation" and "Retaliation" under the FHA fail as a matter of law because Plaintiff cannot prove that AMLI coerced, intimidated, or threatened her, or otherwise interfered with her exercising her rights.</u>

The FHA makes it unlawful "to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.  To establish her claims under § 3617, Plaintiff must show that (1) she is a member of a protected class, (2) she exercised or enjoyed a right protected by the FHA, (3) AMLI's conduct amounted to coercion, intimidation, or a threat against Plaintiff for exercising or enjoying such right, or interference with her ability to so, and (4) AMLI was motivated at least in part by intentional discrimination on her protected group status.  *Carrillo v. Hickenlooper*, No. 12-cv-02034-RM-MEH, 2014 WL 1977984, at *20 (D. Colo. May 14, 2014).  Summary judgment is appropriate when a plaintiff cannot prove that the defendant's conduct was motivated by intentional discrimination or constituted a prohibited act on account of the plaintiff's exercise of a protected right.  *See Green v. El Paso Cnty., Colo.*, No. 18-cv-1122-WJM-KMT, 2020 WL 4429387, at *15 (July 31, 2020).

Here, as already established above, Plaintiff cannot prove that AMLI was motivated even in part by discriminatory intent on the basis of her race or disability. Moreover, Plaintiff cannot prove that AMLI's alleged conduct amounted to coercion, intimidation, a threat, or interference on account of her pursuing her rights under the FHA.

29 | P a g e

CRINER V. PPF AMLI 10020 TRAINSTATION CIRCLE, LLC ET AL.
CASE 1:21-CV-02693-MEH
MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

The sole evidence Plaintiff has produced on this point is her own testimony that in her interactions with Mr. Lee, she "felt" his tone was "flustered with [her]" and "negative," (Plaintiff Dep., at 123:3-15.), that he was "attacking" her account of cigarette smoke entering her apartment, (Id., at 127:5-6.), and that he was "interrogating" her when he asked for information about when and from where the smoke was coming.  (Id., at 165:16-18.)  However, this is nothing more than Plaintiff's own subjective perception of their interactions, and as Plaintiff herself admits, she "[has] a chip on [her] shoulder."  (Id., at 37:21-23.)  Stripped of Plaintiff's hyperbole, these are merely assertions that she disliked Mr. Lee's tone, and any seemingly harsh tone perceived by Plaintiff can easily be explained by Plaintiff's own conduct, as she admits to "reaming" Mr. Lee from the outset.  (SUMF, ¶ 19.)  Plaintiff neither points to nor can prove any specific act by Mr. Lee or anyone else that could reasonably be considered "intimidation" or "retaliation."  Therefore, AMLI is entitled to summary judgment on this claim as well.

     D.    <u>Plaintiff's common law claims are preempted by the Colorado premises liability statute and fail as a matter of law because Plaintiff cannot establish that AMLI breached any duty owed to her.</u>

          1.    <u>Plaintiff's common law claims are preempted by the Colorado premises liability statute.</u>

Plaintiff asserts claims for negligence, breach of the covenant of peaceful and quiet enjoyment, breach of contract, and IIED based on AMLI's alleged failure to grant Plaintiff's requested accommodations.  However, the Colorado premises liability statute, C.R.S. § 13-21-115, governs "any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conduct or circumstances existing on such property."  C.R.S. § 13-21-115(3).  This "includes, *inter alia*, the duty of a landlord to its tenant[.]"  *Stanley*

*v. Creighton Co.*, 911 P.2d 705, 707 (Colo. Ct. App. 1996).  "[T]he statute is not, as a matter of law, restricted solely to activities and circumstances that are directly or inherently related to the land," but rather "the premises liability statute applies to conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner."  *Larrieu v. Best Buy Stores, L.P.*, 303 P.3d 558, 563 (Colo. 2013) (emphasis added).  Thus, the statute applies to claims where, as here, "the plaintiff's alleged injury occurred while on the landowner's real property . . . as a result of activities conducted or circumstances existing on the property."  *Id.*

The premises liability statute was intended to codify the sole legal duty owed by a landowner to those on its premises, and it preempts all common law claims against the landowner.  *Vigil*, 103 P.3d at 328-29.  *See also, e.g., Wilson v. Marchiondo*, 124 P.3d 837, 840 (Colo. Ct. App. 2005) ("[A] plaintiff may recover against a landowner only as provided under the statute, and not under any common law theory.") (Emphasis added). Therefore, in this case, Plaintiff's common law claims for negligence, breach of contract, breach of the covenant of quiet enjoyment, and IIED are preempted.[8]  *See Tancrede v. Freund*, 401 P.3d 132, 135 (Colo. Ct. App. 2017) (holding that plaintiff's claims for negligence and negligence *per se* were preempted by premises liability statute); *Wyle v. Skiwatch Condo. Corp.*, 183 Fed.Appx. 760, 762 (10th Cir. 2006) (premises liability statute preempted claim for breach of contract); *Winstead v. Criterion Ins. Co.*, 781 P.2d 170, 172 (Colo. Ct. App. 1989) (noting that action for breach of the covenant of quiet enjoyment is a personal common law action); *Pembroke v. Trans Union, LLC*, No. 16-cv-

---

[8] AMLI notes that even if Plaintiff's common law claims were not preempted, each of them fails as a matter of law under the undisputed facts of this case.  Because the Court need not reach this issue, AMLI does not brief it here but reserves the right to do so, should the need arise.

Criner v. PPF AMLI 10020 Trainstation Circle, LLC et al.
Case 1:21-cv-02693-MEH
Motion for Summary Judgment and Memorandum in Support Thereof

03194-CMA-STV, 2017 WL 8897173, at *3 (D. Colo. Oct. 27, 2017) (noting that plaintiff's claims for negligence and IIED were common law claims).

2.  <u>Plaintiff's premises liability claim fails as a matter of law because she cannot prove any breach of the statutory duty.</u>

The premises liability statute delineates the duties a landowner owes to trespassers, licensees, and invitees. *See* C.R.S. § 13-21-115(4). Even assuming, without conceding, that Plaintiff was an invitee,[9] her claim nonetheless fails because she cannot show a breach of the statutory duty owed to her. "[A]n invitee may recover for damages caused by the landowner's <u>unreasonable</u> failure to exercise <u>reasonable care</u> to protect against dangers of which [the landowner] actually knew or should have known." C.R.S. § 13-21-115(3)(c)(I) (emphasis added). Summary judgment for the defendant is appropriate when the plaintiff is unable to establish one or more of the elements in this statute. *See Giblin*, 147 F.Supp.3d at 1214.

Here, it is undisputed that Plaintiff subjectively read the AMLI Ridgegate advertisement of "common areas that are 100% smoke-free, fostering a healthy living environment," to mean that the entire property was nonsmoking, despite the explicit

---

[9] No court in Colorado appears to have decided what classification applies here—*i.e.*, a landlord's duty to its tenant for injuries allegedly sustained in her own leased apartment unit from activities by third parties in nearby units. AMLI notes that Plaintiff's rights under the Lease to possess and control her apartment unit, even to the exclusion of AMLI in most circumstances, support the conclusion that the duty owed is less than that owed to an invitee. *See* C.R.S. § 13-21-115(1) (defining "landowner" owing duty, in part, based on person's "possession of real property" and "legal[] responsib[ility] for the condition of real property"); *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 364 P.3d 1035, 1041-42 (Colo. 2015) (noting that a person may be a "landowner" based on possession, even if not to the exclusion of all others); *Wilson v. Marchiondo*, 124 P.3d 837, 840 (Colo. Ct. App. 2005) (holding that landlord in residential lease owed no duty of care to third party injured in backyard by tenant's dog because tenant, not landlord, was "person in possession" of the property under the premises liability statute). *Cf. Stanley*, 911 P.2d at 708 (reasoning that public policy animating statutory duty applies with greater force to common areas because the tenant does not have "an ability to correct hazardous conditions"). *But see Lakeview Assocs. V. Maes*, 907 P.2d 580, 584-85 (Colo. 1995) (holding that, with respect to common areas, tenant was an invitee); *Giblin v. Sliemers*, 147 F.Supp.3d 1207, 1210-11 (D. Colo. 2015) (parties stipulated that a tenant renting a cabin from a landlord was an invitee).

limitation of the policy to "common areas" in both the advertisement and the Lease. (SUMF, ¶¶ 12-15.)  Plaintiff never asked anyone at AMLI about the smoking policy before she signed the Lease and moved in, nor did anyone represent to her that the entire property was nonsmoking.  (SUMF, ¶¶ 12-13.)  Plaintiff also did not disclose her disability and her need to live at a nonsmoking property to AMLI before moving in.  (SUMF, ¶¶ 4 and 29.)  Plaintiff read the provisions in the Lease prohibiting smoking in common areas, (SUMF, ¶ 15.), but somehow was unconcerned that there was no similar prohibition on smoking in apartment units.

Instead, Plaintiff made the unreasonable assumption that the term "common areas" somehow included the individual apartments of the community.  This conclusion is especially curious considering Plaintiff's multiple past experiences allegedly learning that smoking is permitted at other apartment complexes after moving in.  (SUMF, ¶¶ 6-10.)  Moreover, Plaintiff could have easily dispelled her unreasonable assumption by simply comparing the AMLI Ridgegate advertisement to advertisements of other AMLI properties, such as AMLI Littleton and AMLI Dry Creek, which were publicly available for her to view and which explicitly state that the properties are "100% smoke free *both inside your apartment home and out*."  (SUMF, ¶ 14.)  In sum, Plaintiff had every reason and opportunity to inquire about AMLI Ridgegate's smoking policy but failed to do so, to the point of willful ignorance, especially given the facially unambiguous statements on AMLI Ridgegate's own website and Lease.[10]  Thus, Plaintiff invited the risk that, as with her

---

[10] Plaintiff indisputably was aware of and relied on the language of the website prior to executing her lease at AMLI Ridgegate.  She described the "Breatheasy" and "smoke-free common areas" language on the website and in the Lease as "a thumbs up to [her] and "music to [her] ears."  (SUMF, ¶ 15.)

past apartments, AMLI Ridgegate would permit its residents to smoke inside their apartments.

Further, it is undisputed that once Plaintiff learned of the smoking policy and informed AMLI of her disability, AMLI acted promptly and reasonably to mitigate any alleged danger.  Multiple AMLI employees and third parties attempted to verify the presence and point of origin of cigarette smoke in Plaintiff's apartment but were unable to do so.  (SUMF, ¶¶ 24 and 28.)  Plaintiff did not provide any information to AMLI about when the smoke was entering her apartment until after she had already informed AMLI that she was vacating the premises.  (SUMF, ¶¶ 26, 34, and 36.)  Nonetheless, AMLI replaced the carpet in Plaintiff's apartment in June because she initially thought it was causing her issues.  (SUMF, ¶ 18.)  AMLI hired Coit to scrub the airducts in Plaintiff's apartment to mitigate the alleged effects of the unverified emanation of smoke into her apartment.  (SUMF, ¶ 24.) Most importantly, AMLI repeatedly offered to let Plaintiff break her Lease immediately without penalty, with her fees refunded, and with $750 of her moving costs paid for by AMLI, but Plaintiff rejected these offers.  (SUMF, ¶¶ 22-23, 27, 29, and 30-35.)  The only demands of Plaintiff AMLI did not meet were either impossible (no other community in Douglas County) or facially unreasonable (lowered rent).  *See Giebeler,* 343 F.3d at 1154 (stating that "mandating lower rents for disabled individuals would fail the . . . reasonableness inquiry").

In no universe can AMLI's efforts be an "<u>unreasonable</u> failure to exercise <u>reasonable care</u>" to protect Plaintiff in violation of the Colorado premises liability statute. The Division has already made a factual determination that the evidence is insufficient to show that AMLI "failed to make a good faith effort to address" Plaintiff's issues.  (SUMF,

¶ 48.)  Plaintiff's subjective and unreasonable dissatisfaction that AMLI would not bankroll her move to another apartment cannot change this outcome.  The undisputed facts show that AMLI took substantial reasonable measures to satisfy Plaintiff.  Plaintiff cannot prove a breach of any duty under the statute.  Therefore, AMLI is entitled to summary judgment.

      E.    <u>Plaintiff's claim for breach of the warranty of habitability fails as a matter of law because the apartment was not in any condition of physical disrepair rendering unfit for human habitation.</u>

Colorado law statutorily imposes a warranty in every lease "that the premises is fit for human habitation."  C.R.S. § 38-12-503(1).  This warranty is breached if (1) the "residential premises" is (a) "uninhabitable," which is statutorily defined to include certain enumerated <u>structural</u> defects,[11] or (b) "[i]n a condition that interferes with the tenant's life, health, or safety," <u>and</u> (2) the landlord has "reasonably complete" notice of the condition and fails to timely make reasonable efforts to remedy the issue.  C.R.S. § 38-12-503(2).

Plaintiff's allegations do not rise to the level of a breach under these statutes.  By its plain and unambiguous language, the warranty of habitability is breached if there is some structural defect such that the <u>premises</u> is in a <u>condition</u> that renders it unfit for human dwelling.  The condition must be physically connected to the premises, as further shown by the statutory enumeration of physical conditions rendering the premises uninhabitable.  There is nothing in the statutory scheme to suggest that it reaches other

---

[11] These include (1) mold, under certain conditions, or a **substantial** lack of (2) functioning appliances, (3) waterproofing or weather protection, (4) plumbing or gas facilities, (5) running water and reasonable amounts of hot water, (6) functioning heating facilities, (7) electrical lighting, (8) reasonably clean and sanitary common areas, (9) appropriate extermination of infestations, (10) adequate and serviceable exterior garbage receptacles, (11) floors, stairways, and railings in good repair, (12) locks on all exterior doors, and (13) compliance with certain applicable building, housing, and health codes.  C.R.S. § 38-12-505 (emphasis added).

Criner v. PPF AMLI 10020 Trainstation Circle, LLC et al.
Case 1:21-cv-02693-MEH
Motion for Summary Judgment and Memorandum in Support Thereof

tenants' conduct that happens to occur on the premises, let alone every noxious fume that may emanate from one dwelling to another in a multifamily residence.  Plaintiff has not and cannot cite any authority for such a sweeping proposition because none exists, even assuming for purposes of this Motion that such "noxious fumes" existed.

Moreover, the requirement that the premises be fit for "human" habitation, rather than the "tenant's" habitation, imposes an objective standard to determine whether the condition of the premises is uninhabitable.  To do otherwise would subject landlords to standards as various as the tenants themselves for what renders a dwelling uninhabitable.  Accordingly, Plaintiff's claim for breach of the warranty of habitability fails as a matter of law because she cannot show that the premises—*i.e.*, the apartment itself—was in such a condition that it was unfit for human habitation, not her own subjective preferences.  The statutes simply were not written to sweepingly encompass secondhand smoke or other fumes intermittently wafting into a tenant's apartment.  AMLI was demonstrably willing to and did take reasonable steps to mitigate the infiltrating odors in Plaintiff's apartment, even absent objective evidence of the existence of such odors.

## CONCLUSION

Plaintiff's Advertising Claims fail because AMLI's website explicitly and accurately advertises smoke-free "common areas," and Plaintiff cannot sustain this claim with her own subjective and unreasonable interpretation of that language.  Her Accommodation Claims under the FHA for disability discrimination fail because Plaintiff's highly specific and onerous demands were neither "reasonable" nor "necessary" under the FHA.  Her Accommodation Claims for race discrimination fail because she cannot prove that she was treated less favorable than other similarly situated residents not members of her

protected classes.  Her Accommodation Claim for retaliation under the FHA fails because Plaintiff's subjective, melodramatic mischaracterizations cannot elevate AMLI's conduct to the level of intimidation, coercion, threats, or interference.  Her Accommodation Claims under Colorado common law, as preempted by the premises liability statute, fail because the record establishes that AMLI acted reasonably by attempting to address her issues and did not violate its statutory duty to her.  Finally, her Accommodation Claim under the statutory warranty of habitability fails because Plaintiff cannot prove her apartment was in a state of physical disrepair rendering it objectively unfit for human habitation.

For the foregoing reasons, the Defendants respectfully urge this Court to grant their Motion for Summary Judgment in its entirety.

Respectfully submitted this 9th day of December, 2022.

*s/ Andrew Roach*

Theresa L. Kitay (NC Bar #51631)
Andrew Roach (GA Bar # 771059)
BAKER, DONELSON, BEARMAN, CALDWELL &
    BERKOWITZ, P.C.
3414 Peachtree Road, NE
Monarch Plaza, Suite 1500
Atlanta, GA  30326
Tel: (404) 443-6745
tkitay@bakerdonelson.com
aroach@bakerdonelson.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

Plaintiff is *pro se* and not registered with the Court's CM/ECF system.  I hereby

certify that on December 9, 2022, I sent the foregoing document to Plaintiff electronically,

having first obtained Plaintiff's consent to electronic service, to the following address:


Carmen M. Criner  - margcriner1964@gmail.com



*s/ Andrew Roach*

Andrew Roach (GA Bar #771059)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.